```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DR. PAULA SMALL,

                    Plaintiff,

         - against -                        MEMORANDUM AND ORDER

NOBEL BIOCARE USA, LLC; NOBEL BIOCARE AB;   05 Civ. 3225 (NRB)
HENRY SCHEIN, INC.; CAMLOG USA, INC.;       06 Civ. 683 (NRB)
NEOSS LTD.; NEOSS INC.; IMPLANT DIRECT
MFG. LLC d/b/a IMPLANT DIRECT, LLC;
SOUTHERN IMPLANTS, INC.; SOUTHERN
IMPLANTS (PTY) LTD.; MEGAGEN USA, INC.;
and MEGAGEN CO., LTD.,

                    Defendants.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Dr. Paula Small initiated this action against defendants alleging infringement of two patents pertaining to dental implants, and it was recently reassigned to us following Judge Richard J. Holwell's resignation. Presently before us is the motion of defendants Nobel Biocare USA, LLC and Nobel Biocare AB (together, "Nobel") for reconsideration of a portion of the Court's August 11, 2011 claim construction ruling.

For the reasons set forth herein, Nobel's motion is granted in part.

## BACKGROUND

The relevant background pertaining to the construction of the disputed claims is set forth in detail in Judge Holwell's August 11, 2011 opinion (the "Opinion"), Small v. Nobel Biocare

USA, LLC, Nos. 05 Civ. 3225, 06 Civ. 683, 2011 U.S. Dist. LEXIS 91387 (S.D.N.Y. Aug. 16, 2011), and we assume familiarity with the terminology and constructions discussed therein. In that decision, Judge Holwell construed a variety of terms in plaintiff's two patents. At issue here is the construction of the term "flange" as it appears in two phrases in claim 11 of U.S. Patent No. 5,580,246 (the "'246 Patent"):[1] "a radially extending flange on said body" and "terminating within the thickness of said flange."[2]

The Opinion adopted plaintiff's definition of "flange" -- "the upper portion of the body of the implant which lies underneath the boss and extends radially from the longitudinal axis and forming a protruding collar or rim." Id. at *21, 30. Judge Holwell based his decision on a consideration of two

---

[1] That claim provides that the dental implant comprises:

> an elongated body having a longitudinal axis and a proximal surface generally transverse to said longitudinal axis, said proximal surface is a portion of a radially extending flange on said body, said flange having thickness, a boss extending from said proximal surface, said boss having a transverse face and a non-round cross section as viewed transversely along said axis, and an axial hole in said body, at least one slot penetrating at least one of said proximal surface and said transverse face of said implant and terminating within the thickness of said flange.

[2] The Opinion also construed the term in connection with two phrases in claim 22 of the '246 Patent, see Small, 2011 U.S. Dist. LEXIS 91387, at *20, and Judge Holwell applied his construction to the phrase "circular flange" as used in U.S. Patent No. RE38,945 (the "'945 Patent"), id. at *30 n.4. Nobel does not seek reconsideration of the term's use in the phrases in claim 22, (Nobel's Reply Mot. for Reconsideration of Claim Construction Op. 1), but it does seek reconsideration of the term "circular flange" in the '945 Patent, (Notice of Errata, No. 05 Civ. 3225, docket no. 107). Nevertheless, for consistency, we apply our decision to each of the phrases construed by Judge Holwell.

2

pieces of intrinsic evidence. In particular, he found that Nobel's competing construction -- "a rim or collar projecting radially outwards from the implant body"[3] -- did not describe the patent's use of the term "flange" because it (1) was inconsistent with how the parties agreed the term "proximal surface" was used in the patent, see id. at *21-23; and (2) rendered certain language within claim 11 superfluous, see id. at *23-24. Judge Holwell also rejected Nobel's arguments about the insufficiency of plaintiff's definition, including that plaintiff's definition encapsulates a limitation that does not further a professed benefit and that it is contrary to the dictionary definition of the term. See id. at *26-30.

---

[3] It is perhaps easiest to demonstrate the difference between plaintiff's and Nobel's definitions of "flange" with diagrams.

   

**Diagram 1**               **Diagram 2**

In Diagram 1, a top-down view of the implant, the outer circle represents the circumference of the flange. Under plaintiff's definition, the flange extends from that outer edge to the axial hole, represented by the small, shaded circle in the middle of the diagram. In contrast, under Nobel's definition, the flange extends from the outer edge to the circumference of the implant body, represented in the diagram by the dashed circle. Plaintiff's flange is thus coincident with both the red and the blue areas of the diagram (as well as extending under the boss, represented by the horizontal rectangle), while Nobel's flange consists solely of the red area of the diagram (and including the relevant area under the boss). Diagram 2 represents a lateral cross-section of the implant. The parties' flanges are again represented by the colored regions. The boss sits atop the flange, and the implant body is below it. The axial hole is the shaded, vertical rectangle.
     It should be noted that these diagrams are intended as explanatory aids only. They neither represent the only implant configurations covered by the claims nor are drawn in accordance with patent conventions.

Nobel moved for reconsideration of the Opinion's construction of "flange" on August 30, 2011, challenging its treatment of each of the above arguments. The case was transferred to this Court on February 22, 2012, and we now decide the motion for reconsideration.

## DISCUSSION

**I.  Legal Standard**

A motion for reconsideration under Local Rule 6.3[4] is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Liu v. Credit Suisse First Boston Corp. (In re Initial Public Offering Sec. Litig.), 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal quotation marks omitted). As such, reconsideration is typically only appropriate when "the movant ha[s] pointed to 'controlling decisions or data that the court overlooked' --

---

[4] Although Nobel has nominally moved pursuant to Federal Rule of Civil Procedure 60, that rule does not apply. It admits reconsideration in two situations: (1) when there has been a clerical error or other oversight or omission which has obscured the court's intent, Fed. R. Civ. P. 60(a); see also Aalmuhammed v. Kesten, No. 98 Civ. 171, 2002 U.S. Dist. LEXIS 25295, at *14-15 (S.D.N.Y. July 30, 2002) (citing Hodge v. Hodge, 269 F.3d 155, 158 (2d Cir. 2001)); and (2) when any of a variety of circumstances obtain which call into question the validity of a final order, Fed. R. Civ. P. 60(b). Nobel does not allege any clerical mistake, and Markman opinions are not final orders, see Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc., No. 94 Civ. 6296, 2002 U.S. Dist. LEXIS 17, at *14 (S.D.N.Y. Jan. 3, 2002) (citing Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1479 (Fed. Cir. 1998) (Newman, J., dissenting)); see also Kittay v. Korff (In re Palermo), No. 08 Civ. 7421, 2011 U.S. Dist. LEXIS 11681, at *11-12 (S.D.N.Y. Feb. 7, 2011) (declining to decide a motion for reconsideration under Rule 60 because the order was not final). We therefore construe the motion as one made under Local Rule 6.3. Although that rule requires that motions for reconsideration be filed within fourteen days of entry of the judgment and this motion was filed outside that period, plaintiff has not objected to the motion on that ground, and we exercise our discretion to consider the motion.

4

matters 'that might reasonably be expected to alter the conclusion reached by the court.'" Lora v. O'Heaney, 602 F.3d 106, 111 (2d Cir. 2010) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). It may, however, also be warranted "where the movant demonstrates that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Padilla v. Maersk Line, Ltd., 636 F. Supp. 2d 256, 259 (S.D.N.Y. 2009) (citing Virgin Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." Families for Freedom v. U.S. Customs & Border Protection, No. 10 Civ. 2705, 2011 U.S. Dist. LEXIS 113143, at *6 (S.D.N.Y. Sept. 30, 2011) (quoting Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009)).

**II. The Appropriate Definition of the Term "Flange"**

    A.   <u>Departing from the Ordinary Meaning of a Term</u>

The task before a court when construing claims is to "determine the meaning of any disputed words from the perspective of one of ordinary skill in the art at the time of the filing." Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1381 (Fed. Cir. 2008). The Federal Circuit therefore

"generally assigns claim terms their ordinary and customary meanings, according to the customary understanding of a person of ordinary skill in the art who reads them in the context of the intrinsic record." Agilent Techs., Inc. v. Affymetrix, Inc., 567 F.3d 1366, 1376 (Fed. Cir. 2009); see also Intervet Inc. v. Merial Ltd., 617 F.3d 1282, 1287 (Fed. Cir. 2010) ("To the extent possible, claim terms are given their ordinary and customary meaning, as they would be understood by one of ordinary skill in the art in question at the time of the invention."); Epistar Corp. v. Int'l Trade Comm'n, 566 F.3d 1321, 1334 (Fed. Cir. 2009) (referring to the "heavy presumption that claim terms carry their full ordinary and customary meaning").[5]

The ordinary meaning of a term may frequently be informed by dictionaries, both technical and general purpose. See, e.g., Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1325 (Fed. Cir.

---

[5] Plaintiff argues that we may not rely on any cases not referenced by Nobel in its original claim construction briefing. (Pl.'s Mem. in Opp'n to Nobel's Mot. for Reconsideration of the Claim Construction Order 4-5 (citing Bulgartabac Holding AD v. Republic of Iraq, No. 08 Civ. 6502, 2010 U.S. Dist. LEXIS 99077, at *5 (S.D.N.Y. Sept. 21, 2010)).) The purpose of a motion for reconsideration, however, is to draw a court's attention to its prior missteps, whatever they may have been. If the parties did not cite relevant controlling precedent to the Court in the original briefing, that may explain why an error was made, but it does not excuse the error. We therefore consider all relevant precedent, whether cited in the claim construction briefs before Judge Holwell, cited in the motion for reconsideration briefs before this Court, or not cited by the parties at all. Cf. JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc., No. 95 Civ. 319, 1997 U.S. Dist. LEXIS 13438, at *8-9 (S.D.N.Y. Sept. 4, 1997) (denying a motion for reargument in part because movant "rel[ied] on the same authority as that relied upon in its [original] briefs").

6

2008) ("[D]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words . . . ." (quoting Phillips v. AWH Corp., 415 F.3d 1303, 1322 (Fed. Cir. 2005))); Mangosoft, Inc. v. Oracle Corp., 525 F.3d 1327, 1333 (Fed. Cir. 2008) ("[W]hen considered in the context of and not divorced from the intrinsic evidence, there is nothing improper about referencing [dictionary definitions] in correctly construing the claim."); Waner v. Ford Motor Co., 331 F.3d 851, 854 (Fed. Cir. 2003) (noting that "[d]ictionary definitions are useful" when determining ordinary and customary meaning, and relying on the dictionary definition of "flange" as "a raised or projecting edge"). While it is true that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context," Phillips, 415 F.3d at 1321, quoted in Small, 2011 U.S. Dist. LEXIS 91387, at *30, the patentee must have "'clearly express[ed]'" its intent "to deviate from the ordinary meaning" of a word before we may find that it has "'act[ed] as its own lexicographer in the written description,'" Small, 2011 U.S. Dist. LEXIS 91387, at *34 (internal alteration omitted) (quoting Helmsderfer, 527 F.3d at 1381); see also Laryngeal Mask Co. v. Ambu A/S, 618 F.3d 1367, 1372 (Fed. Cir. 2010); DSW, Inc. v. Shoe Pavilion, Inc., 537 F.3d 1342, 1347

7

(Fed. Cir. 2008) ("The plain and ordinary meaning of claim language controls, unless that meaning renders the claim unclear or is overcome by a special definition that appears in the intrinsic record with reasonable clarity and precision.").

B.  The Opinion Insufficiently Justifies Its Departure from the Ordinary Meaning of "Flange"

Judge Holwell recognized that both general-purpose and technical dictionaries are in accord with the definition of "flange" proffered by Nobel. See Small, 2011 U.S. Dist. LEXIS 91387, at *28-30. Dictionaries routinely define "flange" along the lines of "a protruding rim or edge,"[6] and Nobel's definition accordingly excludes any of the implant body[7] (in contrast to

---

[6] See, e.g., Melloni's Illustrated Medical Dictionary 168 (3d ed. 1997) (defining "flange," in relevant part, as "[a] protruding rim or edge"); Heinemann Dental Dictionary 104 (4th ed. 1997) ("[a]n external or internal rim"); The American Heritage College Dictionary 517 (3d ed. 1997) ("[a] protruding rim, edge, rib or collar"); Merriam-Webster's Collegiate Dictionary 442 (10th ed. 1996) ("a rib or rim"), cited in Pl.'s Opening Claim Construction Br. 8; 71 J. of Prosthetic Dentistry 73 (1994) (same); Van Nostrand's Scientific Encyclopedia 1260 (8th ed. 1995) ("[a] rim or projection extending completely around the object which is flanged").

[7] The parties acknowledge that the claims describe the flange -- however defined -- as constituting part of the implant body because the implant's "elongated body ha[s] . . . a proximal surface [that] is a portion of [the] flange." However, for ease of discussion, our use of the term "implant body" will refer only to the portion of the implant that is below the flange and directly above that section of the implant, i.e. the implant body less the flange as defined herein. The "implant body" as we are using the term is shaded green in the below representation of a cross-section of the implant.



**Diagram 3**

We also note that the claims are somewhat inconsistent in their recognition of the flange as part of the implant body. Claim 11 refers to the flange being "on" the implant body, and claim 22 refers to it as "extending

8

plaintiff's express inclusion of the non-protruding implant body in its definition of "flange"). Even recognizing that "a claim term may be clearly redefined without an explicit statement of redefinition," Bell Atl. Network Servs. v. Covad Commc'ns Grp., Inc., 262 F.3d 1258, 1268 (Fed. Cir. 2001), we cannot justify supplanting the customary definition with another; the intrinsic evidence simply does not demonstrate that plaintiff intended to jettison the word's ordinary meaning and supply her own.

Judge Holwell relied on two phrases from claim 11 of the '246 Patent to warrant his departure from the plain meaning of "flange." He first found that the language that the "proximal surface is a portion of a radially extending flange" is inconsistent with the standard definition of "flange." See Small, 2011 U.S. Dist. LEXIS 91387, at *21-23. He noted that the parties agree that the "proximal surface" covers at least the upper surface of the implant not covered by the boss,[8] yet Nobel's construction of "flange" creates the possibility that the proximal surface would be limited to a smaller portion of

---

from the body." Both claims seem to presuppose that the flange is distinct and separate from the implant body, not a portion of the body. We read this potential inconsistency as supporting Nobel's definition of "flange."

[8] The construction of "proximal surface" adopted in the Opinion and unchallenged by any party -- "the portion of the outer boundary of the implant that extends across the top of the implant body" -- confirms this description. See Small, 2011 U.S. Dist. LEXIS 91387, at *30-37.

9

the implant's surface.⁹ See id. at *22. He reasoned that because the "proximal surface is a portion of [the] flange," the proximal surface cannot extend beyond what is deemed to be the flange. See id. at *22-23. Therefore, because Nobel's definition of "flange" does not encompass any of the implant body, in any design where the boss does not cover the entirety of the implant body's upper surface, some portion of that surface would not be included within the definition of "proximal surface" -- which the parties agree is not contemplated by the claims.

This interpretation of the phrase in claim 11 requires reading the word "is" as a limiting word, rather than as non-restrictive. Simply because the proximal surface "is" a portion of the flange, that does not necessitate that it "is not" also a portion of the implant body.¹⁰ The word is ambiguous and, without further context suggesting that it should be treated as

---

⁹ In other words, Judge Holwell decided that the proximal surface includes both the red and blue areas of Diagram 1 but no surface covered by the boss, which is represented by the white rectangle:



**Diagram 1**

But he interpreted the fact that "the proximal surface is a portion of the flange" to mean that, under Nobel's definition of "flange," the proximal surface would include nothing more than the red area of the diagram.

¹⁰ Indeed, the claim specifically states that the "body ha[s] . . . a proximal surface," indicating that the proximal surface is part of the implant body. See also, e.g., '246 Patent, col. 5, l. 63 (referring to "the surface 44 on the implant"); id., col. 6, l. 27 (same); id., col. 8, l. 41 (same).

10

limiting,[11] cannot justify departing from the ordinary meaning of "flange." Cf. Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc., 243 F. App'x 603, 607 (Fed. Cir. 2007) (requiring a textual basis before reading a limitation into claim language); NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1309-10 (Fed. Cir. 2005) (requiring "a textual 'hook' in the claim language" before importing a limitation from the specification).

The second failing Judge Holwell found with Nobel's definition stems from the language in claim 11 requiring that "at least one slot penetrat[es] at least one of said proximal surface and said transverse face of said implant and terminat[es] within the thickness of said flange." See Small, 2011 U.S. Dist. LEXIS 91387, at *23-24. He interpreted this language to encompass a slot or slots penetrating the proximal surface, the transverse face of the implant (i.e., the surface of the boss), or both, and proceeding to penetrate the flange.[12] He reasoned that Nobel's definition did not admit the

---

[11] We note also that analogous language in claim 22, which in many ways parallels claim 11, indicates that "the proximal surface form[s] a portion of a flange." "Forms" does not carry the same ambiguity that may be read into the word "is" -- that the proximal surface forms a portion of the flange does not speak at all to whether it also forms a portion of the implant body. In other words, the proximal surface may form both a portion of the flange and a portion of the implant body; specifying one does not preclude the other from also being the case. Reading claim 22 together with claim 11 suggests that the limited reading of "is" is unwarranted. Cf. Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001) (noting that a claim term found in different claims should be construed consistently across claims).

[12] This interpretation assumes use of Nobel's construction of "thickness of the flange," which, as discussed infra, is not an appropriate construction. That assumption is another reason to reject Judge Holwell's finding.

11

realization of one of the claim's covered configurations: if the flange does not include any of the implant body, there are no circumstances in which a slot penetrating just the surface of the boss and not the proximal surface would also be able to penetrate the flange. See id. Nobel's definition would therefore make the claim language "at least one of" superfluous because it would require that a slot always penetrate the proximal surface.

As Nobel points out, this analysis was not advanced or otherwise discussed by any party. Judge Holwell therefore did not have the benefit of being provided with this diagram:



**Diagram 4**

In the diagram, a top-down view of the implant, the outer circle represents the perimeter of the flange; the innermost circle the axial hole; the red dashed circle the perimeter of the implant body; the large square the boss; and the two small rectangles the slots. The slots are contained wholly within the boss and therefore do not penetrate the proximal surface, which does not

continue under the boss. See id. at *31-32. However, because the boss extends beyond the perimeter of the implant body, the flange -- under both Nobel's and plaintiff's definitions -- does continue under the part of the boss containing the slots. The slots, therefore, penetrate the boss but not the proximal surface, yet they may still terminate within the flange. The construction Judge Holwell postulated was impossible under Nobel's language is, in fact, entirely possible. Thus, Nobel's definition does not render meaningless any language found in the claims.

Because neither of Judge Holwell's reasons for departing from the ordinary meaning of "flange" withstand further analysis, he should not have rejected Nobel's definition of "flange" in favor of plaintiff's.

### C.   Plaintiff's Definition of "Flange" Is Not Supported by Other Intrinsic Evidence

In its original claim construction briefing, plaintiff offered a passage from the specification of the '246 Patent in support of its definition of "flange." In particular, plaintiff pointed to the following passage: "In an implant 90 of FIG. 9, a generally square boss 92 is elevated above the surface 44 of a flange 45 on the implant 90. . . . [A] tapped hole 20 is at the center of the surface 44 . . . ." '246 Patent, col. 9, ll.4-7. She argued first that the specification is here envisioning that

13

the boss sits atop the flange and therefore "flange" must include a portion of the implant body, and second that the hole can be at the center of the surface of the flange only if the flange extends all the way to the hole.

Judge Holwell rejected plaintiff's analysis in connection with his determination of the meaning of "proximal surface," see Small, 2011 U.S. Dist. LEXIS 91387, at *34-35, and plaintiff has not challenged that portion of the Opinion. Judge Holwell's determination is, "by necessary implication," a rejection of the analysis in the context of the definition of "flange," as well, and we therefore do not need to reassess the merits of the argument. Toro Co. v. White Consol. Indus., Inc., 383 F.3d 1326, 1335-36 (Fed. Cir. 2004) (holding that claim construction constitutes law of the case). Thus, in the absence of any challenge to Judge Holwell's determination of the meaning of "proximal surface," we decline to revisit the specification's effect on that construction. It is sufficient to say that we agree with Judge Holwell's reasoning with respect to this language in the specification and find it equally applicable to the current discussion.[13]

---

[13] Plaintiff also argued that the specification's reference to the "exposed flange surface," '246 Patent, col. 6, ll. 1-2; see also id., col. 7, ll. 64-67, indicates that the flange must run under the boss and therefore include part of the implant body. Judge Holwell also rejected this notion when he held that the proximal surface does not extend under the boss, see Small, 2011 U.S. Dist. LEXIS 91387, at *30-37, and we accept that analysis. Moreover, as noted previously, it is perfectly consistent with Nobel's

14

     D.    Nobel Has Supplied the
<u>Appropriate Definition of "Flange"</u>

Given the above factors, we find that the definition of "flange" offered by Nobel is consistent with its ordinary and customary meaning and not belied by the intrinsic evidence, while plaintiff's definition does not accord with the term's customary usage. Contrary to Judge Holwell's findings, the definition of "flange" proffered by Nobel "does not contradict any definition found in or ascertained by a reading of the patent documents," <u>Praxair</u>, 543 F.3d at 1325 (quoting <u>Phillips</u>, 415 F.3d at 1322-23), and we therefore adopt Nobel's definition of "flange" going forward.

**III. The Appropriate Construction of the Phrase "Terminating Within the Thickness of the Flange"**

Although the phrase "a radially extending flange on said body" requires no special construction beyond defining "flange,"[14] we need to further consider the meaning of a slot's "terminating within the thickness of the flange." Nobel asserts that this phrase means "extending downward to a stopping point within the flange," while plaintiff offers the somewhat lengthier "terminating within a portion of the body of the implant located within planes defined by the axially uppermost portion and lowermost portion of the flange."

---

definition of "flange" that the flange could extend under the boss and yet not include any of the implant body.

[14] Nor does the '945 Patent's "circular flange" require further construction.

15

Judge Holwell did not need to consider these constructions separately from his discussion of "flange" because his adoption of plaintiff's definition obviated the parties' differences. He nevertheless rejected Nobel's proffered justifications for its definition, see Small, 2011 U.S. Dist. LEXIS 91387, at *24-27, and we see no error with his analysis.

On this motion,[15] Nobel contends that Judge Holwell committed error when he found "unpersuasive" Nobel's arguments that plaintiff's construction of "thickness of the flange" does not advance the specification's professed benefit that the implant reduces the risk of bacterial activity. Id., at *27. Judge Holwell committed no error here. To the extent we should consider a patent's professed benefits, we should construe claims in such a way as to ensure that we do not unnecessarily detract from those aims. Cf. ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1375-76 (Fed. Cir. 2009) (construing a term to ensure that the claim would achieve its function). Thus, we

---

[15] Although Nobel does not contest it, we note that we also agree with Judge Holwell's finding that it is the claim, not the specification, which defines the full measure of the patent. See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 339 (1961) ("[T]he claims made in the patent are the sole measure of the grant . . . ."), cited in Phillips, 415 F.3d at 1312. Nobel's argument that the specification does not disclose an implant where the slot penetrates through the boss into the area of the implant body on the same level as the flange but not into the flange itself is thus irrelevant. There is no language in the specification specifically disclaiming this construction, and, even if there were, "limitations discussed in the specification may [not] be read into the claims." Intervet, 617 F.3d at 1287. We must thus not "confuse exemplars or preferred embodiments in the specification that serve to teach and enable the invention with limitations that define the outer boundaries of claim scope." Id.

16

should not construe the claim in such a way as to increase risk of bacterial activity. Permitting slots to terminate within the thickness of the flange as construed by plaintiff does not increase the risk of bacterial infection, and therefore the patent's claimed benefits need not influence the Court's decision to adopt this construction.

Nobel has thus provided no reason to favor its construction of "terminating within the thickness of the flange" over plaintiff's. Moreover, Nobel's construction is unsatisfactory for a reason not implicated by plaintiff's: it requires that a slot terminate within the flange itself, thereby reading out of the claim the words "the thickness of." Such a construction is impermissible. See Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."). By including the words "the thickness of the flange," the patentee clearly intended something other than simply "the flange." Cf. Cohesive Techs., Inc. v. Waters Corp., 543 F.3d 1351, 1368 (Fed. Cir. 2008).

Plaintiff's construction of "terminating within the thickness of the flange" is thus the appropriate one.

## CONCLUSION

For the foregoing reasons, the motion (No. 05 Civ. 3225, docket no. 98; No. 06 Civ. 683, docket no. 226) is granted in part. We adopt Nobel's definition of "flange" but retain plaintiff's construction of "terminating within the thickness of the flange."

Dated:   New York, New York
         March 20, 2012

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**
Andrew A. Phillips, Esq.
Cindy Yang, Esq.
Dawn L. Rudenko, Esq.
Jennifer L. Bianrosa, Esq.
Steven I. Weisburd, Esq.
Christopher Wu, Esq.
Dickstein Shapiro LLP
1633 Broadway
New York, NY 10019-6708

**Attorney for Defendants**
Sheila N. Swaroop, Esq.
Knobbe Martens Olson & Bear LLP
2040 Main Street, 14th Floor
Irvine, CA 92614